AUGUST HERBST, SR., et al., Appellants, v. G. E. HELD et al., Appellees.

**SCHOOLS AND SCHOOL DISTRICTS:** Officers—Officers De-Facto
1 **Without Election or Appointment.** The board of directors of an independent school corporation which has been supplanted by the official organization of a *new* and larger district, become de-facto officers of the *new* corporation by openly, notoriously, in good faith, and with the apparent acquiescence of the people, acting for and on behalf of such *new* corporation. The acts of such de-facto officers may not be collaterally assailed.

**SCHOOLS AND SCHOOL DISTRICTS:** Creation of District—De-Facto
2 **Organization.** A de-facto school corporation exists as soon as the electors officially adopt a proposition to create an independent district out of the territory of an existing district and territory adjoining.

*Appeal from Plymouth District Court.*—WILLIAM HUTCHINSON, Judge.

OCTOBER 24, 1922.

ACTION in equity, to enjoin the collection of certain school taxes certified under proceedings had by the board of directors of the independent school district of Hinton, and levied by the board of supervisors of Plymouth County. A temporary writ was issued, but, upon motion of the defendants, it was dissolved. Plaintiffs appeal from the order of dissolution.—*Affirmed.*

*Burgess, Gill, Sammis & Boylan,* for appellants.

*Roseberry & Roseberry,* for appellees.

STEVENS, C. J.—The plaintiffs are citizens and taxpayers of the school district, and the defendants are the officers of the old district, and the county treasurer and county auditor of Plymouth County, respectively. The motion to dissolve the injunction was supported by numerous affidavits, upon which, together with the pleadings, the cause was tried and submitted. A school corporation known as the independent school district of Hinton, in Plymouth County, existed for many years prior to August 13, 1921.

1. SCHOOLS AND SCHOOL DISTRICTS: officers: officers de-facto without election or appointment.

In pursuance of a petition signed by the requisite number of electors, a special election was held on the above date, for the purpose of establishing a new independent school district of Hinton, under the provisions of Section 2794, Code Supplemental Supplement, 1915, to include all of the town of Hinton, which was included in the old district, and certain additional contiguous territory. In this election, 86 votes were cast for, and 12 against, the proposition. Prior to the calling of the special election, bonds had been voted and sold by the old district, for the purpose of raising funds with which to build a new schoolhouse. Nothing further was done toward the erection of a new building until February 21, 1922, when a contract was let therefor. The proceeds derived from the sale of the bonds were in the possession of the school treasurer on the date of the special election, and were carried to the credit of the new corporation. Instead of calling a meeting for the election of a new board, as required by Section 2795 of the Code, the board of the old corporation, immediately after the result of the election was declared, caused taxes to be certified for the new district, as follows: "For the general fund, $11,500; for interest on the bonds outstanding of the original independent district $1,675; and for the schoolhouse fund $1,500." These amounts were, owing to the absence of the secretary, certified by the president of the board, and the same were levied in the usual way of levying taxes by the board of supervisors, after which the levy was

spread upon the proper books by the county auditor. The officers of the old district continued to act for and on behalf of the new corporation until March 13, 1922, when the annual election of the voters of the district was held, and two of the members of the old board were elected directors of the new corporation. After this election was held, the two new members, together with the remaining members of the old board, organized by electing the president of the former board president of the new organization. This action was brought March 27, 1922, to restrain the collection of the taxes levied and certified in accordance with the proceedings had by the old board on August 13, 1921, and also to restrain the carrying out of the contract entered into by the board on February 21, 1922, for the erection and equipment of a new school building.

As stated, an order for a temporary writ was issued, but dissolved upon motion of the defendants. Appellants, for the purpose of their appeal, concede that all of the proceedings of the old board up to and including the holding of the special election were regular and valid. As this position is in harmony with the holding of the court below, and with the contention of appellees, we have only to determine whether the acts of the officers of the old board, complained of in the name and on behalf of the new corporation, are void, or constitute valid acts of defacto officers, and are, therefore, not subject to collateral attack. It was the duty of the board, following the election, upon ascertaining the result thereof, and that the proposition to establish a new independent district had carried, to ''give the usual notice for a meeting to choose a board of directors,''—two to be chosen to serve until the next annual meeting, two until the second, and the rest until the third.

''The board shall organize by the election of officers in the usual manner.'' Section 2795, Code.

''The organization of such independent district shall be effected on or before the first day of August of the year in which it is attempted, and, when completed, all taxes certified for the school township or townships of which the independent district formed a part shall be void so far as the property within the limits of the independent district is concerned, and the board of

such independent district shall fix the amount of all necessary taxes for school purposes, including schoolhouse taxes, at a meeting called for such purpose at any time before the third Monday of August, which shall be certified to the board of supervisors on or before the first Monday of September, and it shall levy said tax at the same time and in the same manner that other school taxes are required to be levied.'' Code Section 2796.

Before the members of the board of the original corporation could attain the status of de-facto officers of the new, it was necessary that at least a de-facto corporation, for which they assumed to act, should exist. The rule is universal that, wherever there is a valid law under which a corporation having the powers assumed by those claiming to act as de-facto officers might have been lawfully created, and an attempt, in apparent good faith, has been made to comply with the requirements of the law, and the corporation thus attempted to be created is organized, and enters upon the transaction of business, its existence as a de-facto corporation is established. *Nelson v. Consolidated Ind. Sch. Dist.*, 181 Iowa 424. That there was a good-faith effort to establish a new school corporation in accordance with the statute is, in effect, conceded by appellant. Nothing was lacking to complete its organization, except the election of officers.

2. SCHOOLS AND SCHOOL DISTRICTS: creation of district: de-facto organization.

The phrase ''de-facto corporation'' is generally used to denote bodies of a more or less defective legal organization, limited to such as fall short of being corporations de-jure, but whose organization is so far complete and legal that their corporate existence cannot be attacked collaterally. Constantineau on De Facto Doctrine, Section 47. Every preliminary step required by statute had been taken for the establishment of the new corporation. The only power left in the old board was to call a meeting for the election of officers. The new corporation was so far complete that its predecessor ceased to exist as a legal entity. Instead of invoking its authority to call a meeting for the election of officers, the old board, in apparent ignorance of the statute, at once assumed to act as officers of the new corporation. Everyone interested treated the new organization as

the existing school corporation, as will presently appear. There was no lack of good faith on the part of those who sought to create a new district. A de-facto officer who exercises official functions, without color of election or appointment, is defined by the Supreme Court of Connecticut in *State v. Carroll*, 38 Conn. 449, to be "one whose acts, though not those of a lawful officer, the law, upon principles of policy and justice, will hold valid so far as they involve the interests of the public and third persons, where the duties of the office were exercised * * under such circumstances of reputation or acquiescence as were calculated to induce people, without inquiry, to submit to or invoke his action, supposing him to be the officer he assumed to be."

This definition has been adopted by the Supreme Court of the United States, and by practically all other courts of this country. *Hussey v. Smith*, 99 U. S. 20 (25 L. Ed. 314); *Butler v. Phillips*, 38 Col. 378; *Buck v. Hawley & Hoops*, 129 Iowa 406; *Griffin's Case*, 11 Fed. Cas. 7; Constantineau on De Facto Doctrine, Sections 104 to 110, inclusive. The acts and duties performed by the members of the old board in the name and on behalf of the new organization are best stated by quoting the language of the affidavit of the secretary of the board, as follows:

"That on and after August 18, 1921, there have been fourteen meetings of the defendants acting as board of directors for said proposed district and that since said date they took over the old teachers' contracts, hired and contracted for new teachers, made contracts for conveyance of pupils to school, made temporary improvements on school building, allowed current bills for coal, light, heat and supplies for the new school district, called a mass meeting of the voters of the new district to secure the consensus of opinion as to the location of the new schoolhouse and did conduct such an informal meeting of the patrons of the school, provided for athletic facilities for the students, selected location for new school building, secured architect's plans for new school building, advertised for bids in the Le Mars Sentinel and the Hinton Register for the construction of a new building, both of said papers being papers of general circulation in the proposed district, let contracts substan-

tially as set forth in the petition filed by the plaintiff for construction of building, paid drivers of conveyances for pupils and paid teachers and current and running expense by means of warrants drawn on the treasurer, and conducted a school for and on behalf of said proposed district from September 4, 1921, until this date, March 31, 1922, and that all of said doings and acts were done openly and with the full knowledge of the public and that the directors herein defendants acted generally and completely as said directors during all of said time and that there was no question, hint or suggestion of their lack of authority and lack of capacity until March 27, 1922, when the petition of the plaintiffs was placed on file. That the parties having the contract for the building of the new schoolhouse have commenced excavation work, and have expended considerable time, money and labor in the fulfillment of their contract with said directors acting as such and that contracts exist with the teachers, janitors and others for the conduct of the school during the balance of the school year.''

It is clear from the foregoing that the old board exercised the duties and functions of the new corporation under ''such circumstances of reputation or acquiescence as were calculated to induce people, without inquiry, to submit to or invoke their action,'' supposing them to be the officers they assumed to be. These acts and circumstances gave them the status of de-facto officers. The doctrine de-facto is of ancient origin, and owes its practically universal acceptance by the courts to the justice and necessities of society. Text-writers trace its origin back as far as 1431, to a case recorded in the Year Books under the name of The Abbe de Fontaine. If the contention of appellants were sustained, every act performed in the name and on behalf of the new corporation would be invalidated, and intolerable public confusion and inconvenience would result. No one has been harmed by the acts of the de-facto officers of the new district, nor is it claimed that they would have been invalid if performed by officers elected in accordance with the statute. We said, in *Buck v. Hawley & Hoops*, supra:

''The theory of the doctrine of officers de-facto and the principles sustaining the validity of their acts are that, though

wrongfully in office, justice and necessity require that their acts, done within the scope of official authority and duty, be sustained, to the end that the rights and interests of third persons be protected and preserved.''

We have no hesitation in holding that the defendants, except the county treasurer and county auditor, were de-facto officers of a de-facto corporation, and that, therefore, their acts, under practically all authorities, are not subject to collateral attack. *Town of Decorah v. Gillis & Epsy*, 10 Iowa 234; *Cochran v. McCleary*, 22 Iowa 75; *Peirce v. Weare*, 41 Iowa 378.

What we have said disposes of every question affecting the validity of the assessments and acts in question that may be raised upon this appeal. It follows, therefore, that the order of the court dissolving the temporary writ must be and is— *Affirmed.*

Weaver, Preston, and De Graff, JJ., concur.