APPEAL OF BOARD OF DIRECTORS OF GRIMES INDEPENDENT SCHOOL DISTRICT (appellant) from decision of State Board of Public Instruction re Proposed Dallas Community School District et al., appellees, v. COUNTY BOARD OF EDUCATION OF POLK COUNTY et al., appellants.

No. 51406.

(Reported in 131 N.W.2d 802)

DECEMBER 15, 1964.

Leo Ballard, of Des Moines, for appellants.

Willis & Sackett, of Perry, and Irish & Skinner, of Altoona, for appellees.

Moore, J.—On March 28, 1963, pursuant to chapter 275, Code of 1962, a petition was filed with the Dallas County superintendent of schools proposing the formation of Dallas Center Community School District, Grant Independent Number Seven School District (both in Dallas County), Grimes Independent School District and Webster Independent School District (both in Polk County), into a single school district to be known as Dallas Community School District. Following a hearing the joint boards of education of Dallas and Polk Counties approved the plan by a 9 to 1 vote. Webster district appealed to the State Department of Public Instruction which after a hearing . dismissed the petition for reorganization on the ground it did not give proper consideration to the welfare of adjoining districts. Thereafter Grimes district filed an appeal with the district court which was resisted primarily by the Polk County Board of Education. The trial court held the Polk board was not a proper party to resist the appeal, the state department was without jurisdiction upon Webster's appeal and ordered the state department to approve the petition. The Polk board has appealed.

Polk contends the trial court erred in holding (1) it was not a proper party to resist the appeal in district court and (2) the state department was without jurisdiction to consider the appeal thereto by Webster. In addition to resisting these contentions Grimes argues the decision of the state department was arbitrary, unreasonable and without support in the record.

I. Section 275.16, in part, provides: "In case a controversy arises from such meeting [joint meeting of the county boards], the county board or boards or any school district aggrieved may bring the controversy to the state department of public instruction, * * *.

"* * * This decision [of the state department] may be appealed to a court of record in one of the counties by any aggrieved party to the controversy as defined in section 275.8, * * *."

Section 275.8, in part, provides:

"* * * An aggrieved party is hereby defined as the board of directors of a school district whose directors are elected at large, or, if said board is elected from director districts, then that membership of the board of directors whose districts are included in the proposed reorganized area, or a county board of education."

Clearly Polk County Board of Education could have appealed the state department's decision to the district court. It did not do so but with others, including the Webster board, was made a defendant in the Grimes board appeal. Thereafter the Polk and Webster boards together filed a motion attacking certain parts of the Grimes petition. The trial court overruled this motion.

In the fall of 1963 the school board election in Webster Township resulted in the election of two new board members and the defeat of those who had opposed the reorganization plan. This resulted in an entire change of position by the Webster board. It filed a pleading in the district court joining with Grimes in the appeal.

The Polk board filed an answer denying the allegations of the district court petition and requested its dismissal. Thus when tried the state board's decision was being attacked by Grimes and Webster and defended by Polk.

The trial court specifically held the Polk board's work was finished when the joint board approved the petition and used this quote from State ex rel. Schilling v. Community School District of Jefferson, 252 Iowa 491, 495, 106 N.W.2d 80, 83: "When the county board makes its decision and enters its order its work is done. Its decision is final and no appeal may be taken except by 'affected' districts. The proceedings from there on are purely administrative and are under the control of the county superintendent."

The trial court erred. The cited case refers to organization of a school district entirely within one county under section 275.15 which provides for a decision by the county board of education and permits an appeal to a court of record in the county involved by any school district affected. No appeal to the State Board of Public Instruction is provided. We are not here concerned with a reorganization within one county only. Section 275.15 has no application in the case before us.

Section 275.16 refers to reorganization of school districts in two or more counties and is applicable here. By its provisions a county board is expressly granted a right to appeal to the state department and also to the district court. By section 275.8 the county board is made an aggrieved party.

In construing statutes the courts search for the legislative intent as shown by what the legislature said, rather than what it should or might have said. No citation of authority is necessary. See Rule of Civil Procedure 344(f)13.

In Board of Directors of Linden Consolidated School District v. Board of Education, 251 Iowa 929, 103 N.W.2d 696, we considered the question of proper parties involving a school reorganization in Dallas and Guthrie Counties. Redfield Community School District was not included in the plan but attempted to intervene in the district court. We held that district was not an aggrieved party and not entitled to intervene. At page 937, 251 Iowa, page 701, 103 N.W.2d, we say:

"The contention that the petition of intervention filed herein is defensive and that one may engage in appeal litigation once commenced, although he may not commence it, has no merit. His interest must be a legally-recognized interest to participate at all. To intervene in such an appeal, the party intervening must have a standing or interest sufficient to maintain the original appeal. *There is no difference under chapter 275 whether the aggrieved party appeals or responds to an appeal.* The limitations in sections 275.8 and 275.16 are the same. The purpose of such limitations is to restrict appeals to representative bodies interested in the territory involved in the proposed reorganization, and any other holding would tend to avoid this clearly-announced purpose of the legislature." (Emphasis added.)

See also Board of Directors of Pleasant Hill Independent School District v. Board of Education of Polk County, 252 Iowa 1000, 109 N.W.2d 218; Board of Education, Essex Independent School District v. Board of Education, 251 Iowa 1085, 104 N.W.2d 590.

Here the Polk board by statute was an aggrieved party. It had a legally-recognized interest and was entitled to respond to the appeal taken by the Grimes board.

II. The record discloses H. B. Harvey was on July 6, 1960, appointed a director on the Webster board to fill a vacancy. On July 3, 1961, James Seibert was so appointed to fill another vacancy. Each continued to serve with the third director, Elmer Baer, until October 1963. During most of this period Harvey served as president of the board. They conducted all of the business of the Webster district including hiring a secretary-treasurer, approving budgets, paying tuition, transportation and other expenses. •They were recognized as the official board. No other person claimed to be a member of the board.

At a regularly called meeting of the board on April 1, 1963 (four days after the petition for reorganization was filed), the following resolution was passed: "Whereas it is believed to be in the best interest of the citizens of Webster Twp. School Dist. therefore be it resolved that the Webster Twp. School board oppose the formation of the Dallas Community School district and procure the service of an attorney to represent it in this action." Harvey and Seibert voted for the resolution. Baer voted against it.

Leo Ballard was hired thereafter and continued to serve as attorney for the board until the change of membership in October 1963.

The minutes of a board meeting on April 30, 1963, show allowance of certain expenses and this entry: "Mr. Harvey also presented a bill of $370.50 final settlement to Leo Ballard, Attorney. After a discussion of the excessive amount it was decided these bills were legal and must be pd."

The minutes of May 27, 1963, are:

"Monday May 27, 1963. A group of 29 citizens of Webster Sub. Dist. No. 3 met at the H. B. Harvey home to ask the board to withdraw their appeal to the state board on the Dallas Community District reorganization.

"After all others left Elmer Baer board member asked to hold a meeting of the board.

"Members present were H. B. Harvey, Elmer Baer, James Seibert and C. F. Baer, sec'y.

"Elmer Baer made motion that the board withdraw its appeal to the State board.

"Mr. Harvey asked for a second. The motion died for want of a second.

"No other business the meeting adjourned."

Code section 279.6 provides vacancies on school boards shall be filled by the board by appointment and that the appointee shall continue to hold office until his successor is elected and qualified. It also provides the appointee shall qualify within ten days in the manner required by section 277.28.

Section 277.28 requires a director to qualify by taking an oath of office and filing same with the secretary of the board.

Harvey and Seibert failed to take and file a record of their oath of office until June 1, 1963. This of course was after the appeal to the state department and while it was pending.

Grimes contended before the state department and alleged in their district court petition the failure of Harvey and Seibert to qualify rendered the Webster board's appeal of no effect.

The state department expressly refused to consider this attack and ruled on the merits of the proposed reorganization.

The trial court held this failure was not the determining factor and concluded the facts failed to show the Webster board had authorized the appeal to the state department and therefore it was without jurisdiction.

Harvey and Seibert were at least de facto directors prior to taking and filing the oath of office on June 1, 1963. The trial court apparently took this view. It is not seriously contested here by appellee. We hold their acts were valid.

The theory of the doctrine of officers de facto and the principles sustaining the validity of their acts are that, though wrongfully in office, justice and necessity require their acts, done within the scope of official authority and duty, be sustained, to the end that the rights and interests of third persons be protected and preserved. Buck v. Hawley & Hoops, 129 Iowa 406, 105 N.W. 688; Cowles v. Independent School District, 204 Iowa 689, 216 N.W. 83, and citations.

In State ex rel. Hartnett v. Powell, 101 Iowa 382, 70 N.W. 592, where school district directors were duly elected but sworn by a person having no authority to administer the oath we held the directors were de facto officers and their acts valid.

In Herbst v. Held, 194 Iowa 679, 190 N.W. 153, a new school district was formed. The directors of the old district without being elected or appointed continued to serve as before, including the certification of school taxes the collection of which plaintiffs sought to enjoin. In holding the directors were de facto officers and their acts valid at page 684, 194 Iowa, page 155, 193 N.W., it is said:

"It is clear from the foregoing that the old board exercised the duties and functions of the new corporation under 'such circumstances of reputation or acquiescence as were calculated to induce people, without inquiry, to submit to or invoke their action,' supposing them to be the officers they assumed to be. These acts and circumstances gave them the status of de-facto officers. The doctrine de-facto is of ancient origin, and owes its practically universal acceptance by the courts to the justice and necessities of society."

We have no hesitation in holding Harvey and Seibert were de facto officers and their acts at the board meetings were valid. The business of the school board had to be carried on.

Appellant has devoted much of its brief to the contention the status of Harvey and Seibert as well as the validity of the board's acts may be questioned only by quo warranto. In view of our holding we need not, nor do we, decide this issue.

Being in equity this matter is reviewable de novo here. Appellee argues the appeal by Webster was not authorized by any board action and that it resulted from acts by Harvey and Seibert as individuals. The board action adopting the resolution to oppose the reorganization, the board's later refusal to withdraw the appeal and the attorney's appearance and representation of the board until October 1963 defeat such a contention. The unexplained entry of "final settlement" in the minutes of April 30, 1963, does not in our opinion lend any great weight to appellee's contention.

III. Appellee contends, as it did in the district court, that the state board's decision was arbitrary, improper, excessive and without authority in law. The trial court did not determine this issue. We shall do so.

■ ■ We have frequently said the establishment of bound-

aries and formation of a school district are legislative functions, the exercise of which by the judicial department is forbidden by Article III, section 1, Iowa Constitution. We may consider here only the judicial question of whether the state department exceeded its jurisdiction and whether its order was arbitrary, unreasonable and without support in the record. We may not substitute our judgment for that of the state board as to the wisdom of the plan for the proposed district. In re Community School District of Malvern, 250 Iowa 1240, 98 N.W.2d 737; In re Durant Community School District, 252 Iowa 237, 106 N.W.2d 670; Board of Directors v. Board of Education, 252 Iowa 1000, 109 N.W.2d 218; Board of Education v. County Board etc., 254 Iowa 1285, 121 N.W.2d 137.

■ Appellee contends the decision of the state board is not supported by the record. We have carefully read the transcript of the evidence before the joint board on April 23, 1963, the exhibits, the written objections filed by 97 individuals in Webster and Grimes districts, the objection filed by the Webster board and the recommendations made by hired experts as to proper and desirable reorganization in the districts involved here in conjunction with surrounding districts. We conclude the state board's decision is amply supported by the record.

The joint board on April 23, 1963, amended and changed the existing joint planning by the Dallas and Polk boards of education. This was done with little, if any, study.

The objections asserted before the joint board that the proposed reorganization was only a tentative plan, made without study, it was not economical and efficient, it lowered educational standards in some of the districts, it failed to meet recognized standard requirements for the number of students per class and it was an attempt by the Dallas County school board to solve its tax problems by taking only sparsely settled areas in Polk County find some support in the record.

One of the witnesses for the proponents testified: "Well, I believe it (the reorganization) is a step in the right direction. I think it is a long way off from the ultimate. * * * Previous testimony has given consideration to the fact that educators believe that the efficient size of a system should be one where you

have about one hundred students per class. This reorganization would not meet that requirement."

Other adjacent school districts, in need of help by reorganization, could have been included and some of the valid objections would have been eliminated.

The record does not support appellee's contention the state board's decision was arbitrary and unreasonable.

The judgment of the trial court is reversed. The decision of the State Department of Public Instruction is affirmed. —Reversed.

All JUSTICES concur except HAYS, J., not sitting.