Gary ALLEN and Allen
Teepe, Appellants,

v.

STATE Of IOWA, DEPARTMENT OF PERSONNEL, Personnel Commission, Department of Agriculture, and Iowa Public Employment Relations Board, Appellees.

No. 94–02.

Supreme Court of Iowa.

March 29, 1995.

Charles E. Gribble of Whitfield & Eddy, P.L.C., Des Moines, for appellants.

Thomas J. Miller, Atty. Gen., and Linny Emrich, Asst. Atty. Gen., for appellee State.

Jan V. Berry, Des Moines, for appellee Public Employment Relations Bd.

Considered by McGIVERIN, C.J., and HARRIS, LAVORATO, ANDREASEN, and TERNUS, JJ.

HARRIS, Justice.

This dispute concerns the job classification of two public employees. Using an administrative proceeding designed for the purpose, they challenged their status, asserting their work was essentially the same as that undertaken by specialists in another, better paying, category. The matter is before us on their appeal following an adverse ruling on judicial review. We affirm.

Petitioners Gary Allen and Allen Teepe are employees of the Iowa department of agriculture and land stewardship. Both are classified as livestock compliance investigators, a position assigned to the regulatory division of the animal health bureau. That bureau is headed by an executive who supervises three livestock compliance investigators, six livestock inspectors, six veterinarians, and a secretary. Allen and Teepe were livestock inspectors from the 1970s until 1988 when a new, more demanding and complex classification—livestock compliance investigator—was created. Allen and Teepe both were then promoted to the new classification. There is similarity between the name of their new classification (livestock compliance investigator) and the classification they seek (compliance officer). Because the classification titles employ the word "compliance," some care must be taken, initially, to avoid confusing the two.

Like all state agencies, the Iowa department of agriculture does not exist in a vacuum. Its employees are subject to a merit system of employment organized within the department of personnel under Iowa Code chapter 97A (1995). Prior to 1988 the state authorized what Allen and Teepe describe as "one catch-all series called hearings compliance officer." Many positions were included in this classification. In 1988 those previously so classified, and who presided at administrative hearings, became administrative law judges. Others, those who prosecuted (or assisted in prosecuting) cases before administrative law judges, were placed into either of two classifications: (1) attorney; or, if not a lawyer, (2) compliance officer. At this time the department of agriculture, with permission of the department of personnel, decided to create the position of livestock compliance investigator. Because they perform more difficult and complex investigations than livestock investigators, Allen and Teepe were placed in this new category.

This dispute arose because Allen and Teepe think their duties are sufficiently similar to those of compliance officers as to demand they also be so classified. They contend their "special" classification as livestock compliance officers violates Iowa Code section 19A.9(1) and 581 Iowa administrative code section 3.1(1) (similar job responsibilities call for same classification).

I. To resolve the dispute over state job classification we enter a relatively new area of administrative law. In common with many, perhaps most, such areas, it is a world of its own. It has a special tribunal, test tools, even its own developing language.

The agency's classification review process was well explained in the appellee's brief filed by the attorney general. We quote and adopt that explanation as follows:

The Iowa Department of Personnel (IDOP) is the central agency responsible for State personnel management. *See* Iowa Code Chapter 19A (1993) and section 19A.1A. The law requires the director of the department to be "professionally qualified by education and experience in the field of public personnel administration...." *Id.* The director's duties are set forth in chapter 19A. The personnel commission, an appointive board of five members created by section 19A.4, oversees the administration of IDOP. Its duties are also set out in chapter 19A.

One of IDOP's primary duties is to establish and administer a position classification plan, which is to include each position of employment in State government. *See* Iowa Code section 19A.9(1). The classification plan is created "so that the same qualifications may reasonably be required and the same schedule of pay may be equitably applied to all positions in the same class, in the same geographical area." *Id.* IDOP is authorized to allocate the position of each employee to one of the classes in the plan. *Id.* The procedure for appealing that allocation is as follows:

Any employee or agency officials affected by the allocation of a position to a class shall, after filing with the director a written request for reconsideration in the manner and form the director prescribes, be given a reasonable opportunity to be heard by the director. An appeal may be made to the commission or to a qualified classification committee appointed by the commission. . . .

Iowa Code section 19A.9(1). *Id.* IDOP rules governing the classification appeal process are found in 581 IAC Chapter 3.

IDOP makes the initial decision concerning a position classification review request. 581 IAC 3.2 and 3.4. The department staff may rely on classification descriptions, position classification standards or guidelines and position description questionnaires to arrive at position classification decisions. 581 IAC 3.2, 3.3, 3.4. Classification descriptions are published by the department at the time a new classification is created and describe the general nature of the work and qualifications required for a particular job classification. 581 IAC 3.2(1). They provide illustrations of duties and responsibilities assigned to the classification and the abilities and skills required. *Id.* Position classification guidelines also describe the kind and level of duties and responsibilities typically associated with a job classification, and compare and contrast the similarities and differences among levels in a series of job classifications. 581 IAC 3.2(2). Position description questionnaires are forms prescribed by the department for listing the specific duties assigned to an employee and allocat-ing the percentages of time the employee devoted to each activity. 581 IAC 3.3. Position classification decisions are based upon the preponderance of duties assigned to the position. 581 IAC 3.2(1) and 3.4(2). Any request for review of a position must be accompanied by a showing of substantive changes in employment duties. 581 IAC 3.4(6). A new position description questionnaire must be prepared by the employee identifying all new duties. *Id.*

IDOP's position classification decision may be appealed to the classification appeal committee, and a hearing requested. 581 IAC 3.5. The committee is appointed by the director and "shall consist of three persons whose professional background is in human resources management or an area of technical expertise peculiar to the subject matter of the appeal." 581 IAC 3.5(2). If the employee is dissatisfied with the committee's decision, a petition for review may be filed with the personnel commission. 581 IAC 3.5(5). Following the final commission decision, a petition for judicial review may be filed in district court. 581 IAC 3.5(7).

Allen and Teepe explain that:

A person may challenge classification decisions by the director of personnel by the "PDQ process." This procedure is set forth in the rules of the department of personnel and calls for the preparation of a Position Description Questionnaire. . . . A PDQ is a document prepared to gain concurrence by both the employee and management as to the description of the employee's assigned duties. Descriptions of duties in PDQs can also be supplemented by "section A's" or written descriptions of responsibilities which are used for the periodic evaluation of employee performance. Position classification standards are developed and published by the department and contain information outlining the duties and responsibilities that may be typically associated with the job classification. 518 IAC 3.2(2). A personnel representative uses PDQs, "section A's," position description guidelines and any other pertinent documents in order to determine the proper job classification to which a position will

be assigned when conducting the position classification review. 581 IAC 1.7(19)(A). An individual's classification determines the position's official job title and rate of pay.

II. Judicial review of an agency's decision is governed by Iowa Code section 17A.19(8). Review is at law. *Hussein v. Tama Meat Packing Corp.*, 394 N.W.2d 340, 341 (Iowa 1986). It is limited to application of the standards set out in section 17A.19(8). *Abel v. Iowa Dep't of Personnel*, 472 N.W.2d 281, 282 (Iowa 1991).

Under section 17A.19(8), relief may be granted only if agency action was "unreasonable, arbitrary or capricious," or is characterized by abuse of discretion. To be arbitrary or capricious, the agency action must be taken without regard to the law or consideration of the facts of the case. *Office of Consumer Advocate v. Iowa Commerce Comm'n*, 432 N.W.2d 148, 154 (Iowa 1988). To constitute abuse of discretion, the action must be unreasonable and lack rationality. *Frank v. Iowa Dep't of Transp.*, 386 N.W.2d 86, 87 (Iowa 1986). If the agency decision is supported by substantial evidence it should be upheld. Iowa Code § 17A.19(8)(f); *Mount Pleasant Community Sch. Dist. v. Public Employment Relations Bd.*, 343 N.W.2d 472, 476–77 (Iowa 1984). Evidence is substantial to support an agency's decision if a reasonable person would find it adequate to reach a given conclusion, even if the reviewing court might draw a contrary inference. *Mercy Health Ctr. v. State Health Facilities Council*, 360 N.W.2d 808, 811–12 (Iowa 1985).

III. Allen and Teepe first contend the classification appeal committee's refusal to classify livestock compliance investigators as compliance officers was unreasonable, arbitrary and capricious and was an abuse of discretion. The classification was created to meet a specific need felt by the department of agriculture. Three livestock inspectors, skilled specialists, were called to serve as troubleshooters, handling more difficult complaints and complex investigations. The committee was convinced that this classification most accurately describes Allen and Teepe's duties.

Allen and Teepe point to the committee's concession that there is similarity between their duties and those of compliance officers. But similarities, though *necessary* to require the requested reclassification, are not *sufficient* for such a requirement. The record, developed under the process previously described, discloses differences as well as similarities. Allen and Teepe were primarily involved with claimed violations of state and federal regulations on health, sale, release, movement, and listing requirements for livestock. They prepared reports and readied themselves for contested hearings. They also made themselves available to testify in administrative proceedings. Compliance officers were more involved with internal department compliance, reviews, policymaking and with prosecution. Allen and Teepe do not perform the prosecutorial drafting and policy-making functions expected of compliance officers. The extent of internal compliance differs in the two positions, being higher for compliance officers than for livestock compliance investigators such as Allen and Teepe.

Allen and Teepe have been unable to carry their burden of showing the committee's rejection of their request to be unreasonable, arbitrary and capricious or an abuse of discretion. The district court was correct in so holding.

IV. For the reasons previously mentioned the court was also correct in finding that the agency decision was supported by substantial evidence. We therefore reject the assignment of error challenging this holding.

V. Allen and Teepe also challenge the procedure because the classification appeals committee was appointed by the director of the department of personnel. These appointments were made in accordance with the clear mandate of 581 Iowa Administrative Code 3.5(2). But this administrative provision is, as Allen and Teepe insist, in violation of Iowa Code section 19A.9(1) which clearly mandates that the committee be appointed by the personnel

commission. The violation, though, does not help Allen and Teepe.

■ Any violation does not void the actions of the committee because the appointees were clearly acting at least as de facto committee members. The rule in Iowa, as elsewhere, is that actions of de facto members are valid. *Board of Directors v. County Bd. (Educ.),* 257 Iowa 106, 110, 131 N.W.2d 802, 806 (1964). This rule is consistent with the broader rule that presumes the validity of official agency actions. *Teleconnect Co. v. Iowa State Commerce Comm'n,* 404 N.W.2d 158, 162 (Iowa 1987).

· We see no reason to depart from the general rule under the circumstances here. No committee member was involved as prosecutor or advocate in the case, or even in a similar pending case. The personnel officer who did prosecute the case had no authority over committee members. Although committee members are generally subordinate to the director, the director did not personally advocate this or any related case.

The assignment is without merit.

■ VI. In addition to the proceeding we have already described, Allen and Teepe also pursued their classification claim by filing a noncontract grievance with their supervisor, asserting they were being required to work outside their classification of livestock compliance investigators without IDOP authority and without special pay. After the supervisor and the director of the department of agriculture filed denials, the grievance procedure was placed "on hold" until the committee reached the challenged decision we have already discussed. After receiving their adverse decision, Allen and Teepe pursued their grievance before the public employment relations board (PERB).  ·

An administrative law judge found that PERB did not have jurisdiction over job classification issues. PERB accordingly dismissed the appeal and Allen and Teepe sought judicial review of the dismissal. The two judicial review proceedings were consolidated and the district court agreed that only the personnel commission, not PERB, has jurisdiction over the matter. Allen and Teepe also challenge this holding in this consolidated appeal.

IDOP is the central state agency responsible for personnel management under Iowa Code section 19A.1(2). It is specifically given the responsibility to determine employee position classification under Iowa Code section 19A.9(1). We yield to IDOP's expertise in this field. *Abel,* 472 N.W.2d at 282 (Iowa 1991). The district court correctly affirmed the holding that IDOP's jurisdiction in the matter is exclusive.

**AFFIRMED.**