## R. N. Buck v. Hawley & Hoops and Martin Evans, Sheriff, Appellants.

**Sheriffs:** DEPUTIES: APPOINTMENT: EVIDENCE. A failure of the supervisors' minute book to show an approval of the appointment of an alleged deputy sheriff, and failure of the auditor's files to disclose such appointment, is at least *prima facie* evidence that the same was never made.

**De facto officers.** In the absence of any color of election or appointment, a party, to be treated as a *de facto* officer, must have served under such circumstances of reputation or acquiescence as would induce the public to believe without inquiry that he was in fact such officer

**Service of process:** RETURN: AVOIDANCE OF DEFAULT JUDGMENT. The fact that one who signs the return of service of an original notice styles himself a deputy sheriff is not conclusive of his official character, and a default judgment based thereon may be set aside upon a showing that the person making the return was not in fact an officer and that the process was not served as therein stated.

**Return of service:** FALSITY: EVIDENCE. Evidence that an original notice was not served on one of two defendants as recited in the return is admissible to show the falsity of the return as a whole.

*Appeal from Linn District Court,* Hon. J. H. Preston, Judge.

WEDNESDAY, JANUARY 17, 1906.

ACTION to enjoin the collection of and cancel a judgment. Decree as prayed, from which defendants appeal. —Affirmed.

*Crissman & Sargent,* for appellants.

*John N. Hughes,* for appellee.

LADD, J.— Judgment was entered in the circuit court of Linn county January 6, 1885, for $225.33 and costs, in favor of Hawley & Hoops, on an account against Buck & Keech, R. N. Buck, and Philo E. Keech. Execution was not issued until May 11, 1903, and was then levied upon a city lot belonging to Buck. In this suit he asks that the collection of the judgment be enjoined, and it be canceled on the ground that the court was without jurisdiction to render it. Buck and Keech each testify positively that no notice was ever served on him, and to circumstances from which payment of the account to an attorney might be inferred. But the attorney is as positive that payment was not made to him, and the judgment entry recites that " the said defendants, though duly served with process and here solemnly called, came not, but made default," and among the files was found an original notice, with a return of service and statement of fees indorsed thereon, signed, " B. F. Seaton, Sheriff, by John W. Shapley, Deputy." This was shown to be in Shapley's handwriting, but appellee contends that he was not then a deputy sheriff. Section 766 of the Code of 1873 authorized the sheriff to appoint a deputy, such appointment to be in writing and approved by the board of supervisors, and required to be " filed and kept " in the office of the county auditor. The records of the board of supervisors were shown not to contain an approval of Shap-

1. SHERIFFS: deputies appointment: evidence.

ley's appointment, nor was any trace of the record of a bond
found in the bond record, and an attorney testified, with-
out objection, to having examined the files of the county au-
ditor's office, and that neither his appointment nor the ap-
proval or bond was there or in the sheriff's office.   This was
all the evidence bearing upon the issue as to whether Shap-
ley was deputy sheriff, and we think it enough, standing
alone, to prove that he was not such officer.   The law re-
quired the board of supervisors to keep a " minute book,"
in which shall be recorded by the county auditor all orders
and decisions made by it, except in relation to highways.
Sections 442, 470, Code 1897.   The approval of the ap-
pointment of a person as deputy sheriff was an order of the
board such as here contemplated, and the fact that no record
of the approval of Shapley's appointment is to be found in
the " minute book " and no written appointment of him on
file in the auditor's office, where the law required it to be
kept, is, to say the least, prima facie evidence that the ap-
pointment and approval never occurred.

Can it be said that he was a deputy sheriff de facto?
In some cases color of office — that is, an appointment or
an election of some kind — has been thought indispensable
2. DEFACTO        to the finding that a person is an officer de
  OFFICERS.       facto, and without which he is to be regarded as
an intruder or usurper.   State v. Carroll, 38 Conn. 449, 9
Am. Rep. 409 ; Throop on Public Officers, section 623.   But
the current of authority is to the effect that an intruder or
usurper may exercise official functions under such circum-
stances and for so long a time without interference as to
justify belief that he has been elected or appointed.   Wilcox
v. Smith, 5 Wend. 231, 21 Am. Dec. 213 ; Cary v. State,
76 Ala. 78 ; Petersilea v. Stone, 119 Mass. 465, 20 Am. Rep.
335 ; People v. Staton, 73 N. C. 546, 21 Am. Rep. 479 ;
Mallett v. Uncle Sam Gold, etc., Co., 1 Nev. 188, 90 Am.
Dec. 484 ; State v. Murphy, 32 Fla. 138, 13 South. 705 ;
State v. Punkerman, 63 Conn. 176, 28 Atl. Rep. 110, 22 L.

R. A. 653; *Van Amringe v. Taylor,* 108 N. C. 196, 12 S.
E. Rep. 1005, 12 L. R. A. 202, 23 Am. St. Rep. 51; *Cox
v. Houston, etc., R. Co.,* 68 Tex. 226, 4 S. W. Rep. 455;
*Lambert v. People,* 76 N. Y. 220, 32 Am. Rep. 293; 8 Am.
& Eng. Enc. of Law (2d Ed.) 78; *Herkimer v. Keeler,* 109
Iowa 680. The theory of the doctrine of officers *de facto* and
the principles sustaining the validity of their acts are that,
though wrongfully in office, justice and necessity require that
their acts, done within the scope of official authority and
duty, be sustained, to the end that the rights and interests of
third persons be protected and preserved. If Shapley can
be said to have been an officer *de facto,* this must be owing
to the exercise of official functions alone, for the only in-
formation contained in the record that he was acting as
deputy, even, is the signature to the return and the fact that
the court based its judgment thereon. But the circumstance
of his signing the return alone seems hardly sufficient to
induce any one, without inquiry, to act upon the under-
standing that he was an officer. In the absence of any color
of appointment or election the party to be treated as a *de
facto* officer must have acted as such under such circum-
stances of reputation or acquiescence as are calculated to in-
duce people, without inquiry, to submit to or invoke his
action in the supposition that he is in fact the officer he
assumes to be. Manifestly proof of the very act concerning
which the controversy has arisen cannot be regarded as
sufficient to indicate his authority to perform it. *State v.
Wilson,* 7 N. H. 543; *Goulding v. Clark,* 34 N. H. 148.
The court said in the first of the above cases: " If it could,
the authority of third persons to do official acts, when it
came in question, would be proved by the acts themselves,
which would be absurd." And in the last case: " It has,
we think, always been required, in order to prove a person
to be an officer *de facto,* to show that he has acted as such
on other occasions than those which are the subject of the

controversy." The evidence fails to show that he was acting as a deputy sheriff *de facto*.

Section 3524 of the Code of 1897, declares that when service is made in the state " the truth of the return is proven by the signature of the sheriff or deputy and the

3. SERVICE OF PROCESS: return: avoidance of default judgment.

court shall take judicial notice thereof," and appellant contends that, as the court necessarily treated Shapley as a deputy in entering a default, the judgment amounted to an adjudication of that fact which can be corrected only on appeal. If Shapley was not in fact a deputy sheriff, treating his signature as that of such an officer did not make him one, any more than the finding that the original notice had been served was conclusive on that question. Undoubtedly both findings of the court are entitled to great consideration; for, as was its duty, it is to be presumed to have inspected the return and signature thereto. These are matters to be weighed in determining whether there was any service. But if it shall appear that the signature purporting to be that of an officer was not such in fact, for the reason that the person who signed the return was not an officer, then the probative value of the return, not sworn to, has been destroyed. Then does it become apparent that the court has been imposed on. In an action like this the sole inquiry is whether the court had jurisdiction of the persons against whom judgment was entered. If it did not have such jurisdiction, its judgment is necessarily void. The purpose of the inquiry into the character of the return and the recitals of the judgment is in aid of the investigation of the issue whether the essential initiatory step of serving an original notice was taken. In the absence of other evidence, it might be assumed that evidence *aliunde* the return convinced the court that the notice was served. *Little v. Devendorf,* 109 Iowa, 47.

But Keech testified that the notice was never served on him. As the same return indicates service on both judg-

ment defendants, this was admissible as bearing on the falsity
4. RETURN OF SERVICE: falsity: evidence. of the return as a whole; and, when considered in connection with Buck's testimony that notice was never served on him and the fact that Shapley was not a deputy sheriff, we think the evidence ample to sustain the trial court's conclusion that the court in entering judgment was without jurisdiction.    See *Jamison v. Weaver,* 84 Iowa, 611; *Squires v. Jeffrey,* 101 Iowa, 677; *Shehan v. Stuart,* 117 Iowa, 210.    *Affirmed.*