**STATE of Iowa, Appellant,**

v.

**Timothy J. DRISCOLL, Appellee.**

No. 89–261.

Supreme Court of Iowa.

May 23, 1990.

Thomas J. Miller, Atty. Gen., Mark Joel Zbieroski, Asst. Atty. Gen., and Kjas T. Long, County Atty., for appellant.

James A. Bear, Preston, for appellee.

Considered by LARSON, P.J., and LAVORATO, NEUMAN, SNELL, and ANDREASEN, JJ.

NEUMAN, Justice.

We granted discretionary review to consider the State's challenge to a suppression order entered in this prosecution for operating a motor vehicle while intoxicated. The trial court suppressed evidence of defendant Timothy Driscoll's blood-alcohol test on the ground that the police officer who invoked the implied consent procedures was not authorized to do so. We reverse and remand for further proceedings.

I. In September 1988, Brian Sanger was hired by the Preston, Iowa police chief as a part-time law enforcement officer. Sanger is a graduate of the Iowa Law Enforcement Academy. He has also been certified by the Iowa Department of Public Safety to administer the implied consent and blood-alcohol testing procedures of Iowa Code chapter 321J (1987).

On October 29, 1988, Sanger was on duty in Preston when he observed defendant Driscoll run a stop sign. Unable to catch up with him, Sanger radioed ahead to Maquoketa police who successfully stopped Driscoll with a roadblock. After observing signs of insobriety, Sanger arrested Driscoll for operating while intoxicated and transported him to the Maquoketa police station for processing. There Sanger invoked the implied consent procedures of Iowa Code sections 321J.6 and 321J.8. Driscoll's voluntary breath test yielded a blood alcohol concentration of .203. He was charged with violating Iowa Code section 321J.2 (operating while under the influence of alcohol).

In a pretrial motion to dismiss, Driscoll argued that the breath test results should be suppressed because Sanger was not a "peace officer" authorized to invoke such procedures under sections 321J.6 and 321J.8. It seems that Sanger had not completed the psychological testing required of all law enforcement officers in this state prior to employment. *See* Iowa Code § 80B.11(5); 501 Iowa Admin.Code 2.2(80B). The district court ruled that this insufficiency in Sanger's qualifications invalidated the blood-alcohol test and the

court ordered its suppression. The State's application for discretionary review followed.

II.  Iowa law requires that OWI tests be administered at the written request of a "peace officer." Iowa Code §§ 321J.6 and 321J.8. The statutory definition of "peace officer" includes, in pertinent part,

> [a] law enforcement officer who has satisfactorily completed an approved course relating to motor vehicle operators under the influence of alcoholic beverages at the Iowa law enforcement academy or a law enforcement training program approved by the department of public safety.

Iowa Code § 321J.1(7).

As previously noted, Sanger has successfully completed OWI training at the Iowa Law Enforcement Academy. The only question, therefore, is whether he otherwise qualifies as a "law enforcement officer." Iowa Code section 80B.3(3) identifies three categories of personnel who so qualify:

> "Law enforcement officer" means an *officer appointed by the director of the department of natural resources, a member of a police force,* or other agency or department of the state, county or city regularly employed as such and who is responsible for the prevention and detection of crime and the enforcement of the criminal laws of this state *and all individuals,* as determined by the council, who by the nature of their duties may be required to perform the duties of a peace officer.

Iowa Code § 80B.3(3) (emphasis added). Chapter 80B goes on to grant the director of the training academy the authority to promulgate minimum physical and mental fitness requirements "which shall govern the initial recruitment, selection and appointment of law enforcement officers." Iowa Code § 80B.11(5). Those regulations provide, in pertinent part:

> In no case shall any person be selected or appointed as a law enforcement officer unless that person has performed satisfactorily in pre-employment cognitive or personality tests, or both, prescribed by the Iowa law enforcement academy.

501 Iowa Admin.Code 2.2(80B).

III.  The record plainly reveals that the Preston police chief failed to comply with these regulations before hiring Sanger in September 1988. The State concedes as much. In fact, the insufficiency in Sanger's credentials led the Preston City Council to delay Sanger's formal appointment as a member of the force until he successfully completed the necessary testing in mid-November 1988. It then made his appointment retroactive to his date of hire "for pay purposes."

It is equally plain, however, that when Sanger arrested Driscoll in October 1988 and invoked the implied consent procedures, he was cloaked with all the authority his position could carry: a uniform, a badge, a firearm, and a squad car. Moreover, his status as a peace officer was acknowledged by law enforcement agencies in surrounding communities as demonstrated by the actions of the Maquoketa Police Department in their response to his request for assistance in Driscoll's arrest. Given these circumstances, we think Sanger meets the criteria of an officer *de facto,* if not *de jure.*

The rationale for recognizing de facto officers was explained by this court nearly a century ago:

> The theory of the doctrine of officers *de facto* and the principles sustaining the validity of their acts are that, though wrongfully in office, justice and necessity require that their acts, done within the scope of official authority and duty, be sustained, to the end that the rights and interests of third person be protected and preserved.

*Buck v. Hawley & Hoops,* 129 Iowa 406, 409, 105 N.W. 688, 689 (1906). Other states have applied the de facto doctrine in similar contexts to validate the actions of judicial officers, special deputies, parole board members, and police personnel in spite of technical infirmities clouding their appointments. *See Carty v. State,* 421 N.E.2d 1151, 1154 (Ind.App.1981) (status of deputy sheriff established by de facto doc-

trine for purpose of enhancing punishment for battery); *State v. Smejkal,* 395 N.W.2d 588, 591–93 (S.D.1986) (reversing order suppressing evidence obtained with search warrant issued by de facto magistrate); *Scirica v. State,* 265 N.W.2d 893, 894–95 (S.D.1978) (challenge to status of parole board member may not be used to collaterally attack conviction; de facto doctrine applied to ratify member's acts); *City of Wichita Falls v. Cox,* 300 S.W.2d 317, 321 (Tex.Civ.App.1957) ("membership" on police force established by performance of police duties and compensation therefor); *cf. State v. Wright,* 441 N.W.2d 364, 366–368 (Iowa 1989) (reserve police force "established" by hiring and compensating officers; reserve officer acting "under direction of" chief for purpose of satisfying "peace officer" requirement of Iowa Code section 321J.1(7)).

In *Buck,* this court held that to establish a claim of de facto authority in the absence of appointment or election, the officer

> must have acted as such under such circumstances of reputation or acquiescence as are calculated to induce people, without inquiry, to submit to or invoke his action in the supposition that he is in fact the officer he assumes to be.

*Buck,* 129 Iowa at 409, 105 N.W. at 689. For the reasons previously detailed in this opinion, the State has met the *Buck* standard here. Sanger was performing the duties of police officer despite the existence of a technical infirmity that prevented his valid membership on the force. It would be contrary to the public good, and produce only uncertainty and confusion, were we to allow defendants like Driscoll to collaterally attack the authority of a public official who was otherwise trained for and certified to administer the test that is at issue in these proceedings.

As a de facto member of the Preston police force, Sanger was a "peace officer" for purposes of invoking the implied consent procedure of Iowa Code section 321J.6. The results of the test should not have been suppressed. Accordingly, we re-verse the order of the district court and remand this case for further proceedings.

REVERSED AND REMANDED.