STATE of Iowa, Appellant,

v.

William Albert PALMER, Appellee.

No. 95–1458.

Supreme Court of Iowa.

Sept. 18, 1996.

Thomas J. Miller, Attorney General, Susan M. Crawford, Assistant Attorney General, Thomas J. Ferguson, County Attorney, and Kasey Wadding, Assistant County Attorney, for appellant.

Carter Stevens of Beecher, Rathert, Roberts, Field, Walker & Morris, P.C., Waterloo, for appellee.

Considered by HARRIS, P.J., and LARSON, LAVORATO, NEUMAN, and TERNUS, JJ.

TERNUS, Justice.

Appellee, William Albert Palmer, was charged with operating a motor vehicle while intoxicated in violation of Iowa Code section 321J.2 (1995). The district court granted Palmer's motion to suppress the results of a breath test administered after his arrest on the ground the arresting officer was not a "peace officer" as required by Iowa Code section 321J.6. We granted the State's application for interlocutory appeal and now affirm.

### I. *Statutory Framework.*

We begin our discussion with a review of the applicable statutes in order to provide the proper context within which to consider the facts giving rise to this case. Palmer was charged with a violation of Iowa Code section 321J.2. This statute makes it an offense to operate a motor vehicle while under the influence of an alcoholic beverage or while having an alcohol concentration of .10 or more. Iowa Code § 321J.2(1). We have held the general purpose of chapter 321J "is to reduce the holocaust on our highways part of which is due to the driver who imbibes too freely of intoxicating liquor." *Severson v.*

*Sueppel,* 260 Iowa 1169, 1174, 152 N.W.2d 281, 284 (1967).[1]

■ To achieve this goal, chapter 321J provides authority for chemical testing of bodily substances from persons suspected of driving while intoxicated. *See* Iowa Code § 321J.6. This statute is known as Iowa's implied consent law. *Severson,* 260 Iowa at 1171, 152 N.W.2d at 283. The premise underlying implied consent is that "a driver impliedly agrees to submit to a test in return for the privilege of using the public highways." *State v. Hitchens,* 294 N.W.2d 686, 687 (Iowa 1980). In reality, however, the statute normally requires the express consent of the driver before a test is administered. *See* Iowa Code § 321J.9 (if person objects to test, test shall not be given). *But see id.* § 321J.7 (test may be given without person's express consent if person is dead, unconscious or otherwise incapable of giving consent). If the driver refuses the test, the State must revoke his or her driver's license. *Id.* § 321J.9.

■ Although the laudable goal of reducing deaths caused by drunk drivers could be most easily accomplished by the State's unfettered ability to invoke the implied consent law, the legislature has, nevertheless, placed limitations on the circumstances under which section 321J.6 applies. Only when the requirements of section 321J.6 have been met may the State make a suspected drunk driver choose between chemical testing for the presence of alcohol or the loss of his or her driver's license. *State v. Hopkins,* 465 N.W.2d 894, 895 (Iowa 1991).

■ We have held the statutory restrictions on the applicability of the implied consent law serve three purposes: (1) to protect the health of the person submitting to the test; (2) to guarantee the accuracy of the test; and (3) to protect citizens from indiscriminate testing or harassment. *State v. Satern,* 516 N.W.2d 839, 841 (Iowa 1994); *Hopkins,* 465 N.W.2d at 896; *State v. Schlemme,* 301 N.W.2d 721, 723 (Iowa 1981). These purposes are consistent with a sensi-

tivity to the fact such tests invade the bodily integrity of citizens without the protection of a search warrant. *See generally State v. Stanford,* 474 N.W.2d 573, 575 (Iowa 1991) (Iowa's implied consent law constitutes an exception to the warrant requirement of the Fourth Amendment to the United States Constitution).

Such warrantless searches of the person were first validated in *Schmerber v. California,* 384 U.S. 757, 772, 86 S.Ct. 1826, 1836, 16 L.Ed.2d 908, 920 (1966). In that case, the United States Supreme Court considered whether withdrawal of blood from the petitioner, who had been arrested for drunk driving, violated the Fourth Amendment. *Schmerber,* 384 U.S. at 766, 86 S.Ct. at 1833, 16 L.Ed.2d at 917. In considering whether this warrantless intrusion into the petitioner's body was constitutional, the Court noted, "The overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the States." *Id.* at 767, 86 S.Ct. at 1834, 16 L.Ed.2d at 917. The Court concluded testing procedures such as blood tests "constitute searches of 'persons,' and depend antecedently upon seizures of 'persons,' within the meaning of [the Fourth] Amendment." *Id.* It held search warrants are ordinarily required "where intrusions into the human body are concerned." *Id.* at 770, 86 S.Ct. at 1835, 16 L.Ed.2d at 914.

Having concluded Fourth Amendment protections apply, the Supreme Court then considered whether the police were justified in requiring the petitioner in *Schmerber* to submit to a blood test in the absence of a warrant. Although the Court noted there clearly was probable cause for the petitioner's arrest, "the mere fact of a lawful arrest [did] not end [its] inquiry." *Id.* at 768–69, 86 S.Ct. at 1834–35, 16 L.Ed.2d at 919. The Court observed:

> The interests in human dignity and privacy which the Fourth Amendment protects forbid any such intrusions on the mere chance that desired evidence might be obtained. In the absence of a clear indication that in

---

1. The *Severson* case discussed Iowa's original implied consent law, chapter 321B. Chapter 321B was repealed in 1986 and replaced with a revised implied consent law codified in chapter 321J. 1986 Iowa Acts ch. 1220.

fact such evidence will be found, these fundamental human interests require law officers to suffer the risk that such evidence may disappear unless there is an immediate search.

... The importance of *informed, detached and deliberate* determinations of the issue whether or not to invade another's body in search of evidence of guilt is indisputable and great.

*Id.* at 769–70, 86 S.Ct. at 1835, 16 L.Ed.2d at 919 (emphasis added).

The Court held the petitioner's right to be free of unreasonable searches and seizures was not violated by the withdrawal of his blood for purposes of testing it for alcohol content. *Id.* at 770–71, 86 S.Ct. at 1835–36, 16 L.Ed.2d at 919–20. It noted any delay necessary to obtain a warrant would necessarily result in the destruction of evidence because the body naturally eliminates alcohol from the system. *Id.* at 770, 86 S.Ct. at 1835, 16 L.Ed.2d at 919. The Court also observed the test chosen was reasonable and was performed in a reasonable manner. *Id.* at 771, 86 S.Ct. at 1836, 16 L.Ed.2d at 920. Although the Court approved the warrantless invasion of the petitioner's body, it warned against ill-considered extensions of its decision:

We thus conclude that the present record shows no violation of petitioner's right under the Fourth and Fourteenth Amendments to be free of unreasonable searches and seizures. It bears repeating, however, that we reach this judgment only on the facts of the present record. The integrity of an individual's person is a cherished value of our society. That we today hold that the Constitution does not forbid the States minor intrusions into an individual's body *under stringently limited conditions* in no way indicates that it permits more substantial intrusions, or intrusions under other conditions.

*Id.* at 772, 86 S.Ct. at 1836, 16 L.Ed.2d at 920 (emphasis added).

The Iowa legislature was sensitive to these concerns because in enacting Iowa's implied consent statute, the legislature incorporated limitations on the State's ability to conduct a warrantless search of a suspected drunk driver. Section 321J.6 contains the primary conditions limiting the circumstances under which Iowa peace officers may require submission to chemical testing. To rely on the implied consent authorized by section 321J.6, the State must show (1) the withdrawal of bodily substances and the chemical test were "administered at the written request of a peace officer having reasonable grounds to believe that the [defendant] was operating a motor vehicle in violation of section 321J.2" *and* (2) one of six specified conditions exists. Iowa Code § 321J.6(1). The relevant condition here is found in section 321J.6(1)(a): "A *peace officer* has lawfully placed the person under arrest for violation of section 321J.2." *Id.* § 321J.6(1)(a) (emphasis added).

The term "peace officer" bears special meaning under chapter 321J. *See State v. Snider,* 522 N.W.2d 815, 817 (Iowa 1994) (discussing differences in statutory definitions of "peace officer"); *compare* Iowa Code § 321J.1(7) (defining "peace officer" for purposes of chapter 321J) *with id.* § 321.1(50) (defining "peace officer" for purposes of chapter 321). A "peace officer" is defined in chapter 321J as

> *a.* A member of the highway patrol.
>
> *b.* A police officer under civil service as provided in chapter 400.
>
> *c.* A sheriff.
>
> *d.* A regular deputy sheriff who has had formal police training.
>
> *e.* Any other law enforcement officer who has satisfactorily completed an approved course relating to motor vehicle operators under the influence of alcoholic beverages at the Iowa law enforcement academy or a law enforcement training program approved by the department of public safety.

*Id.* § 321J.1(7). In contrast, a "peace officer" for purposes of chapter 321 is defined more expansively to include "every officer authorized to direct or regulate traffic or to make arrests for violations of traffic regulations in addition to its meaning in section 801.4." *Id.* § 321.1(50). Iowa Code section 801.4 broadens the definition of "peace officer" to encompass parole officers, probation officers, conservation officers and special se-

curity officers employed by the board of regents. *Id.* § 801.4(11). A comparison of these statutory definitions makes apparent the legislature's intent that only the specified law enforcement officers could invoke implied consent. *See id.* § 321J.1(7).

In summary, Iowa's implied consent law is the product of competing concerns. On one hand, the legislature wanted to provide an effective mechanism to identify intoxicated drivers and remove them from the highways. On the other hand, the legislature was aware implied consent procedures invade a cherished privacy interest of the public. Therefore, chapter 321J contains limitations on the power of the State to invoke these procedures. With these competing interests in mind, we now turn to the facts of this case.

## II. *Background Facts and Proceedings.*

On March 31, 1995, Officer Daryl Douglass arrested Palmer for drunk driving. Because the admissibility of Palmer's subsequent breath test results depends in part on Officer Douglass's qualifications, we digress momentarily from the events of March 31, 1995, to review Officer Douglass's professional background.

Officer Douglass began working for La Porte City in November 1994, as a reserve police officer. At the same time, he also worked as a Black Hawk County sheriff dispatcher. On March 15, 1995, Douglass was hired as a full-time La Porte City police officer and held that position until June 1, 1995. Douglass had no formal training as a police officer through the Iowa Law Enforcement Academy nor did he have any formal college education in police science. He had ridden with other officers, had watched four to five hours of videotaped arrests of suspects for operating while intoxicated (OWI), had talked with other officers about field sobriety testing, and had witnessed the administration of such tests by other officers on four or five occasions. Douglass had never watched any training video tapes on field sobriety testing and had no training regarding the proper use of such tests. Douglass had never performed a field sobriety test nor arrested anyone for OWI before he stopped Palmer in March 1995.

This brief background on Officer Douglass brings us to the events of March 31, 1995. Shortly before midnight on that date, Douglass drove a mile north of the La Porte City limits and was returning to the city when he observed Palmer's pickup. Palmer was outside the city limits. Radar showed he was traveling at sixty miles per hour in a fifty-five-mile-per-hour speed zone. Douglass turned around and pursued Palmer's vehicle, which eventually stopped.

While Douglass was checking the vehicle registration, Palmer got out of his pickup and walked toward the police car. Douglass observed Palmer having difficulty keeping his balance. Douglass asked Palmer to return to his vehicle and Palmer did so. Subsequently, Douglass approached Palmer's vehicle and noticed the odor of alcohol. He asked Palmer if Palmer had been drinking and Palmer said he had; Palmer's speech was slurred. Douglass then asked Palmer to submit to field sobriety testing. Upon Palmer's acquiescence, Douglass had Palmer perform four tests: the alphabet test, the finger dexterity test, the one-leg stand test and the walk-heel-to-toe test. In Douglass's opinion, Palmer failed all four tests.

Douglass concluded Palmer was drunk and arrested him for OWI. Palmer was then transported to the Black Hawk County jail by Douglass. At the jail, Douglass informed the deputy sheriff on duty that Palmer had failed field sobriety tests and was under arrest for OWI. Douglass also told the deputy he was not certified by the Iowa Law Enforcement Academy and therefore, could not invoke implied consent. Without making an independent assessment of Palmer's intoxication, the deputy then read the implied consent form to Palmer. Palmer consented to testing and a subsequent breath test administered by a second deputy sheriff showed a .154 alcohol level.

Palmer was charged with the offense of operating while intoxicated in violation of Iowa Code section 321J.2. Prior to trial he filed a motion to suppress raising three issues: (1) whether the stop of his vehicle was lawful; (2) whether there was probable cause for his arrest for OWI; and (3) whether the

implied consent procedure had been properly invoked under chapter 321J.

At the hearing on the motion to suppress, Palmer introduced the expert testimony of Michael O'Connor, a retired police officer and former instructor at the Iowa Law Enforcement Academy. At the time of the hearing, O'Connor was teaching procedures to detect and arrest drunk drivers at a local community college. O'Connor testified to the following information. There are recognized procedures for law enforcement officers to use in determining whether a suspect is intoxicated. Three tests have been proven scientifically valid and are considered sufficiently reliable to indicate whether a person is under the influence of alcohol: the horizontal gaze nystagmus test, the walk-and-turn test, and the one-leg-stand test. These procedures, administered in a standardized manner, are used in an effort to minimize the role of a particular officer's subjective opinion. Officers who are certified at the Iowa Law Enforcement Academy are instructed in these standardized field sobriety tests.

O'Connor listened to Officer Douglass's description at the suppression hearing of the tests Douglass administered to Palmer. O'Connor testified two of the tests used by Douglass are not recognized nor taught as standardized field sobriety tests. With respect to the two recognized tests used by Douglass, O'Connor believed the tests were not administered or scored properly. He concluded the results of those tests would not be reliable.

Upon completion of the hearing, the district court granted Palmer's motion to suppress in part. The court ruled the implied consent procedures were not properly invoked:

It was obviously the intent of the legislature that in order for a "peace officer" to be qualified to invoke implied consent or effect a lawful arrest (for purposes of invoking implied consent), that there be a certain level of training before being able to do so. That level of training was not met in this case nor were the statutory requirements, and, therefore, the breath test must be suppressed.

The court ruled against Palmer on the other issues raised in his suppression motion. The court held Doulgass's stop of Palmer's vehicle was lawful even though it occurred outside the city limits of La Porte City. The court also concluded Douglass had probable cause to arrest Palmer.

We granted the State's request to take this interlocutory appeal from the district court's ruling. The State makes three arguments in support of its claim the district court incorrectly interpreted and applied chapter 321J: (1) Officer Douglass was a de facto "peace officer" within the meaning of section 321J.1(7); (2) the law enforcement officers involved in Palmer's case substantially complied with section 321J.6; and (3) any failure to comply with the literal terms of section 321J.6 did not require suppression of the evidence.

III. *Scope and Standard of Review.*

When the admission of evidence depends on the interpretation of a statute, we review for correction of errors of law. *State v. Kjos,* 524 N.W.2d 195, 196 (Iowa 1994). Thus, we review the district court's ruling on Douglass's motion to suppress to decide whether it was based on a correct interpretation of chapter 321J.

IV. *Was Officer Douglass a "Peace Officer" Within the Meaning of Iowa Code Section 321J.1(7) (1995)?*

The State first contends the district court erred in finding Douglass was not a "peace officer" under chapter 321J. The State concedes Douglass does not fall within the literal definition of a "peace officer" as defined in section 321J.1(7). Douglass was not a member of the highway patrol, was not under civil service, was not a sheriff and was not a regular deputy sheriff; although he was a law enforcement officer, he had not "completed an approved course relating to motor vehicle operators under the influence of alcoholic beverages." *See* Iowa Code § 321J.1(7).

The State asserts, however, Douglass was a de facto peace officer. The State relies on the fact Douglass was authorized under chapter 321 to make arrests for OWI. *See id.*

§§ 321.1(50), 804.7. We think this fact is not relevant.

The authority to arrest for OWI is determined by the definition of "peace officer" contained in Iowa Code chapter 321. *See* Iowa Code § 321.1(50). Douglass fell within this definition. We are not concerned here, however, with Douglass's authority to make an arrest; that authority is not challenged on appeal. The issue here is whether Douglass's valid arrest of Palmer for OWI met the statutory conditions required for implied consent. That determination is made by reference to the definition of "peace officer" in chapter 321J. *See* Iowa Code § 321J.1(7)(e). Because different statutes control these questions, it is possible for an officer to make a valid arrest for OWI but not be able to invoke implied consent. Under these circumstances, prosecution of the defendant is still possible; such prosecution will simply not have the benefit of a test taken pursuant to chapter 321J.

■ We reject the State's argument for an additional reason. Section 321J.1(7)(e) defines a "peace officer" to include a law enforcement officer "who has satisfactorily completed an approved course relating to motor vehicle operators under the influence of alcoholic beverages." Iowa Code § 321J.1(7)(e). To hold a law enforcement officer without the training required by section 321J.1(7)(e) is, nevertheless, a de facto peace officer under that section is to ignore the legislature's decision to define "peace officer" more narrowly for purposes of the implied consent law. In essence, we would be saying that a law enforcement officer meeting the definitions of "peace officer" in section 321.1(50) or section 804.7 would also qualify as a "peace officer" under section 321J.6. The court cannot subscribe to such an interpretation as it would completely ignore section 321J.1(7)(e)'s requirement of specialized OWI training. We will not interpret statutes in a way that makes portions of them meaningless. *State v. Ahitow,* 544 N.W.2d 270, 273 (Iowa 1996).

■ Although the State may find it easier to enforce Iowa's drunk driving laws by conducting warrantless searches of suspects regardless of the qualifications of the arresting officers, the legislature did not provide for such an unlimited use of Iowa's implied consent law. The unambiguous language of the statute evidences the legislature's clear intent that law enforcement officers have special training in OWI procedures. We will not undermine the legislature's policy decision by ignoring the plain language of the statute. *See Henriksen v. Younglove Constr.,* 540 N.W.2d 254, 259 (Iowa 1995) (where legislature has defined a term, the court cannot apply a definition it finds more to its liking); *Krull v. Thermogas Co.,* 522 N.W.2d 607, 612 (Iowa 1994) ("we are bound by what the legislature said, not by what it should or might have said"). Where the meaning of a statute is clear, our role is simply to enforce the law according to its terms. *Henriksen,* 540 N.W.2d at 260.

The State cites to our decision in *State v. Driscoll,* 455 N.W.2d 916, 918 (Iowa 1990), to support its argument that Douglass was a de facto "peace officer." In *Driscoll,* the officer who invoked implied consent had not completed the psychological testing required under Iowa law for all law enforcement officers. *Driscoll,* 455 N.W.2d at 916; *see* Iowa Code § 80B.11(5) (1987). The officer had successfully completed OWI training at the Iowa Law Enforcement Academy. *Driscoll,* 455 N.W.2d at 917. We held the officer was a de facto "peace officer" under section 321J.1(7) in spite of the "technical infirmity" clouding his appointment:

> It would be contrary to the public good, and produce only uncertainty and confusion, were we to allow defendants like Driscoll to collaterally attack the authority of a public official *who was otherwise trained for and certified to administer the test that is at issue in these proceedings.*

*Id.* at 918 (emphasis added).

The present case is easily distinguished. Douglass was not "trained for and certified to administer the test that is at issue in these proceedings." Douglass's inability to come within the statutory definition of a "peace officer" is based on more than a technical infirmity. His lack of qualifications goes to the heart of section 321J.1(7)(e). OWI train-

ing teaches officers skills that permit an objective and uniform assessment of intoxication. Thus, the statutory requirement that law enforcement officers have this training protects the citizens of Iowa from "indiscriminate testing and harassment." *See Hopkins,* 465 N.W.2d at 896 (referring to section 321J.6 in general and its requirement of reasonable grounds to believe the defendant was operating a vehicle while intoxicated). It ensures that a warrantless search is not conducted "unless valid reasons exist for testing." *Id.* Douglass lacked the OWI training that would provide these safeguards. Therefore, we decline to hold he is a de facto "peace officer" for purposes of allowing a warrantless search as authorized in chapter 321J.

### V. Did the State Substantially Comply With the Requirements of Chapter 321J?

The State argues the deputy sheriff who obtained Palmer's consent to a breath test substantially complied with section 321J.6 by relying on Douglass's arrest as a basis for invoking implied consent. The State correctly points out we have applied a standard of substantial compliance in deciding whether an officer has met the prerequisite conditions imposed by section 321J.6. *See Satern,* 516 N.W.2d at 841. In *Satern,* we held that substantial compliance with section 321J.6 is sufficient if the purposes underlying section 321J.6's procedural requirements "were not compromised." *Id.*

To fully understand the substantial compliance test we used in *Satern,* it is helpful to review the nature of the procedural irregularities in that case. In *Satern,* the defendant was involved in an automobile accident and transported to the hospital. *Id.* at 840. The State trooper investigating the accident interviewed the defendant and smelled alcohol on his breath. *Id.* at 841. The trooper became convinced the defendant should submit to a blood test and talked to the county attorney about his observations. *Id.* The county attorney, in the presence of the state

trooper, directed a city police officer to invoke implied consent to secure a blood sample from the defendant. *Id.* The officer did so and the defendant consented to a blood test. *Id.*

The defendant later objected to the admissibility of the test results because section 321J.6 requires the officer invoking implied consent to have reasonable grounds to believe the person was operating while intoxicated; the defendant argued the city police officer lacked reasonable grounds because he had no personal knowledge of the defendant's intoxication.[2] *Id.* at 840. We first observed the rule that the "knowledge of one police officer, acting in concert with others, is presumed to be shared by all." *Id.* (citing *State v. Owens,* 418 N.W.2d 340, 342 (Iowa 1988)). We noted the trooper had the necessary knowledge and had imparted it to the county attorney. *Id.* The problem arose because the county attorney, not the trooper, asked the city police officer to invoke implied consent, and the county attorney was not a "peace officer" under section 321J.1(7). *Id.* We held that "this technical and momentary break in the chain of command" did not defeat the rule of shared knowledge. *Id.* Moreover, because the underlying purposes of section 321J.6 were not compromised by the lack of literal compliance with chapter 321J, we held the test results were admissible. *Id.*

We also applied the substantial compliance rule in the *Schlemme* case. *See Schlemme,* 301 N.W.2d at 724. In *Schlemme,* the original arresting officer turned the defendant over to a second officer who invoked implied consent. The second officer did not rearrest the defendant. Therefore, there was not literal compliance with section 321B.3 which, prior to 1986, allowed alcohol testing "at the written request of a peace officer ... only after *the* peace officer has placed such person under arrest...." *See* Iowa Code § 321B.3 (1979) (emphasis added). In order to comply with the literal terms of the statute, the second officer would have had to rearrest the defendant. We concluded such a require-

---

2. The defendant in *Satern* did not challenge the city police officer's status as a "peace officer" under section 321J.1(7)(e).

ment would not further the purposes of the statute. *Schlemme,* 301 N.W.2d at 724. Therefore, we held literal compliance with the statute was not necessary. *Id.* It is notable that in reaching this conclusion we relied on the fact that both officers were equally trained and both were qualified peace officers who were competent to administer the implied consent procedures. *Id.* at 722, 724.

The present case is easily distinguishable from *Schlemme* and *Satern.* In those cases, there was no challenge to the involved officers' qualifications as peace officers under section 321J.1(7). In both cases, the lack of compliance with chapter 321J was merely technical in the sense noncompliance did not jeopardize any of the purposes underlying the implied consent procedures. We cannot say the same here.

■ Douglass was not a qualified peace officer for purposes of the implied consent statute. Moreover, his lack of qualifications directly impacts attainment of the legislative goal to protect citizens from indiscriminate testing and harassment. To conclude that a peace officer administering the implied consent procedures can rely on the observations of one not qualified by statute clearly undermines the purpose behind the legislature's narrow definition of peace officer. Consequently, we hold that the deputy sheriff's reliance on Officer Douglass's arrest of Palmer did not constitute substantial compliance with section 321J.6.

The State assails this holding, arguing that it can substantially comply with the statute in cases like Palmer's by merely having the second, qualified officer rearrest the defendant.[3] The State argues this technical compliance with the statute is a meaningless gesture. Such an action would certainly be meaningless if the only requirement was that the second officer speak the magical words, "I hereby rearrest you." We think, however, this mere formality would not result in substantial compliance with the statute.

What is lacking here is an arrest based on an objective and reliable assessment of intoxication made by one deemed competent under section 321J.1(7). Consequently, to substantially comply with section 321J.6 under the facts of this case, it would have been necessary for the deputy sheriff to have independently assessed, based on his personal observations or tests that he administered, whether there were reasonable grounds to believe the defendant was intoxicated.

■ The State also argues the deputy sheriff's invocation of the implied consent procedures resulted in a de facto rearrest of Palmer. It reasons the deputy possessed the same information as Douglass by virtue of the shared information rule and therefore, the deputy had probable cause to believe Palmer was operating a vehicle while intoxicated. We cannot accept this argument for the same reasons we have rejected the State's substantial compliance argument. Douglass was not qualified under chapter 321J to make an arrest that could provide the basis for invoking implied consent. That is because he lacked the training required by that chapter. Under these circumstances we will not allow the deputy to rely on Douglass's "knowledge" any more than we would allow the deputy to rely on Douglass's arrest.

■ Our conclusion in no way undermines the validity of our prior cases applying the rule of shared knowledge in other situations. *See, e.g., State v. Owens,* 418 N.W.2d

**3.** The State relies on *Severson v. Sueppel,* 260 Iowa 1169, 152 N.W.2d 281 (1967), as authority for its argument that a qualified officer can invoke implied consent, although the arresting officer did not qualify as a "peace officer" under chapter 321J, by merely telling the driver for the second time that he is under arrest. *Severson* does not support this proposition. The facts in *Severson* were similar to those here in that the first arresting officer was not a "peace officer" under section 321J.1(7) but the second officer who invoked implied consent was. *Severson,* 260 Iowa at 1172, 152 N.W.2d at 283. In contrast to

the present case, however, the second officer in *Severson* told the plaintiff he was under arrest. *Id.* We held the State complied with section 321B.3 (later repealed and replaced by section 321J.6). *Id.* at 1175, 152 N.W.2d at 285. It is important to note, however, the facts showed the second officer *personally* observed the plaintiff's condition before making the second arrest. *Id.* at 1172, 152 N.W.2d at 283. Consequently, the *Severson* case cannot be used as support for the State's argument here where the record shows no independent assessment of intoxication by the deputy sheriff.

340, 342 (Iowa 1988); *State v. Schubert,* 346 N.W.2d 30, 32 (Iowa 1984); *State v. Thornton,* 300 N.W.2d 94, 97–98 (Iowa 1981). We merely hold the shared knowledge rule cannot be applied *for purposes of determining intoxication under the implied consent statute* when the arresting officer does not qualify as a peace officer. In this limited situation, application of the shared knowledge rule must be suspended to ensure the legislative purpose underlying the definition of "peace officer" is accomplished, namely that citizens will not be subjected to a warrantless search on the basis of unreliable assessments of intoxication made by untrained individuals.[4]

### VI. *Does the State's Failure to Comply With Chapter 321J Require the Exclusion of the Breath Test Results?*

██ The State's final argument is Palmer's arrest by one who does not qualify as a peace officer under section 321J.1(7) should not be the basis for suppression of the breath test results. As the State correctly points out, we have excluded evidence under section 321J.6 only if a "foundational requirement" of the statute is violated. *See State v. Kelly,* 430 N.W.2d 427, 430 (Iowa 1988); *Schlemme,* 301 N.W.2d at 724. A requirement is considered foundational when the failure to comply with a particular statutory provision undermines one of the purposes of the statute. *Kelly,* 430 N.W.2d at 430.

██ We have already concluded chapter 321J's limited definition of "peace officer" was intended to protect the public from harassment and indiscriminate testing by law enforcement officers who lacked the training required by section 321J.1(7)(e). A failure to require this training would, therefore, undermine one of the purposes of section 321J.6's requirement that the arrest be made by a "peace officer." Consequently, this requirement is foundational and provides a sound basis upon which to exclude the results of Palmer's breath test. .

### VII. *Conclusion.*

We hold the district court correctly ruled the State failed to meet the foundational requirements of section 321J.6. Therefore, the court properly excluded the results of Palmer's breath test.

**AFFIRMED.**

---

4. Because this legislative goal is not threatened by allowing the officer invoking implied consent to rely on the arresting officer's knowledge that the defendant was operating a motor vehicle, the shared knowledge rule would apply to this information.