WATERMAN, Justice
(concurring in part and dissenting in part).
I respectfully concur in part and dissent in part. I agree with the majority’s conclusion that Commissioner Heathcote’s position with an environmental organization did not disqualify her from voting on the antidegradation rules promulgated by the Environmental Protection Commission. The statute creating the Commission provides that a majority of the commissioners will be actively engaged in activities directly affected by environmental regulations. See Iowa Code § 455A.6(l)(a)-(c) (2009).[10] Accordingly, viewpoint bias is contemplated and permitted, and Farm Bureau failed to establish grounds to disqualify Heath-cote.[11]
I disagree, however, with the majority’s conclusion as to Commissioner La Seur. The law requires every commissioner to be an “elector[ ] of the state.” Id. § 455A.6(1). It is undisputed La Seur lost that status when she moved to Montana and registered to vote in Montana. Yet, she continued to serve on the Commission, traveling back to Iowa to vote in favor of the antidegradation rules.
This is not some mere technicality. As the majority emphasizes in the Heathcote portion of its opinion, the Commission has a “broad mandate of authority” and engages in “policy rulemaking” for Iowa. Thus, it is fair and reasonable for the legislature to require that its members be Iowans. As I discuss below, the same requirement applies to all elected state and local officials in Iowa, and all judicial officers, as well as certain other boards *436 and commissions. The Commission concedes La Seur was not an elector of this state when she voted for the antidegradation rules.
The majority acknowledges that La Seur ceased to be qualified to serve once she moved to Montana, but nonetheless upholds her participation based on the de facto officer doctrine. According to the majority’s view of the de facto officer doctrine, the only way to stop an unqualified public official from voting or acting is to bring a quo warranto proceeding to get her or him removed. Meanwhile, while such a proceeding works its way through the courts, the official can continue to vote or act, and affected citizens have no remedy.
I think this is wrong. The legislature corrected this unfairness and narrowed the de facto officer doctrine when it adopted the 1998 amendments to the Iowa Administrative Procedure Act (IAPA), Iowa Code ch. 17A. See 1998 Iowa Acts ch. 1202, § 24 (codified at Iowa Code § 17A.19(10) (2001)). While the de facto officer doctrine may still preclude collateral attack on a past agency action, since 1998 a party may seek direct review of agency action on the ground that one or more decision-makers should have been disqualified. Specifically, Farm Bureau can challenge the Commission’s action under Iowa Code section 17A.19(10)(e) (2009) as “[t]he product of decision making undertaken by persons who were improperly constituted as a decision-making body ... or were subject to disqualification.” The majority disregards that amendment to the IAPA. I would hold that because La Seur was disqualified from voting and the Commission was improperly constituted with her participating, the antidegradation rules are void.
The majority’s use of the de facto officer doctrine — to uphold a vote after La Seur moved her residence to Montana — undermines a variety of residency requirements in the Iowa Code and Constitution.[12] Justices of this court, for example, must be Iowa residents. Iowa Code § 46.14(1); see also Iowa Const, art. V, § 18 (requiring justices to be members of the Iowa bar). Does the de facto officer doctrine allow me to move to Florida and continue voting on decisions of our court, despite objections from the parties, until I am thrown out of office?
As the majority points out, the Commission was exercising a quasi-legislative function when engaged in rulemaking.
*437 Our legislature requires EPC commissioners to live in Iowa to ensure environmental regulations are promulgated by Iowans who understand conditions in our state and who will live under the rules they issue. See Iowa Code § 455A.6(1) (“The members shall be electors of the state.... ”). “Wherever qualifications are fixed there is a division into classes; that is to say, there is a class which may serve, and another that may not.” State ex rel. Jones v. Sargent, 145 Iowa 298, 307, 124 N.W. 339, 343 (1910) (emphasis added). The legislature did not allow exceptions for carpetbaggers. Common sense tells us that a public official will have a greater interest in the rules he or she is voting on, will possess a greater understanding of the issues in question, and will lend more credibility and confidence to the proceeding if he or she is a resident — or specifically in this case an elector — of the jurisdiction affected by the actions of that public official.
The important purposes served by residency requirements have been noted in many court decisions. See, e.g., Woodward v. City of Deerfield Beach, 538 F.2d 1081, 1083 (5th Cir.1976) (noting durational residency requirements ensure “candidate knowledge of the issues and problems of the area”); Triano v. Massion, 109 Ariz. 506, 513 P.2d 935, 938 (1973) (finding a residency requirement that candidates had to be qualified electors for six months was supported by the conclusion that candidates living in the districts they represent are likely to familiarize themselves with the people and the problems of the district); State v. Macias, 162 Ariz. 316, 783 P.2d 255, 258 (Ariz.Ct.App.1989) (noting a state constitutional provision requiring elected officers to be “qualified elector[s]” of the state at the time of the election was intended to prevent “political carpetbagging,” and without such qualifications, “anyone in Arizona or elsewhere would be free to run for the office of Mayor of Nogales so long as he or she established residence after the election in time to be a qualified elector before the term of office began”); Wall v. Mun. Ch, 223 Cal.App.3d 247, 272 Cal.Rptr. 702, 703-04 (1990) (noting that “the possibility that citizen confidence in the adjudication of traffic cases increases when they are handled by local residents” was an important legislative goal that was sufficient to justify the requirement that traffic commissioners be residents of the county in which they are appointed); Snyder v. Boulware, 109 Mont. 427, 96 P.2d 913, 915 (1939) (indicating the purpose of a residency requirement for county commissioners “was to disqualify those who were not familiar -with the needs of the particular section of the county”); Gangemi v. Rosengard, 44 N.J. 166, 207 A.2d 665, 668 (1965) (noting its previous caselaw supports a residency requirement for city commissioners on the theory that “residence assures a rudimentary understanding of local conditions”); Horwitz v. Reichenstein, 15 N.J. 6, 103 A.2d 881, 882 (1954) (stating the “lack of residence in his ward by a ward councilman imperil[s] the representation of the ward in the sense intended by the statute”); Farnsworth v. Jones, 114 N.C.App. 182, 441 S.E.2d 597, 602 (1994) (indicating one rationale of a residency requirement is to “ensure that elected officials sincerely represent the residents of a particular district”). The majority opinion thwarts the legislature’s goal of ensuring the Commission regulations are promulgated exclusively by Iowans who will live under those regulations.
But, the fundamental problem with the majority’s opinion is that it conflicts with the IAPA.[13] Prior to 1998, the IAPA only *438 allowed courts to reverse or modify agency action
if substantial rights of the petitioner ha[d] been prejudiced because the agency action [was]:
a. In violation of constitutional or statutory provisions;
b. In excess of the statutory authority of the agency;
c. In violation of an agency rule;
d. Made upon unlawful procedure;
e. Affected by other error of law;
f. In a contested case, unsupported by substantial evidence in the record made before the agency when that record is viewed as a whole; or
g. Unreasonable, arbitrary or capricious or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion.
Iowa Code § 17A.19(8) (1997). Significantly, however, in the 1998 amendment, the following language was added:
The court shall reverse, modify, or grant other appropriate relief from agency action, equitable or legal and including declaratory relief, if it determines that substantial rights of the person seeking judicial relief have been prejudiced because the agency action is any of the following:
[[Image here]]
e. The product of decision making undertaken by persons who were improperly constituted as a decision-making body ... or were subject to disqualification.
See 1998 Iowa Acts ch. 1202, § 24. La Seur was subject to disqualification once she moved to Montana.[14] And, the Commission was improperly constituted when it included a voting member, La Seur, who had lost her required status as an Iowa elector. This provision precludes use of the de facto officer doctrine here.
The 1998 amendment to the IAPA renders irrelevant the majority’s lengthy discussion of the history and development of the common law de facto officer doctrine in Iowa and the federal courts. The 1998 amendment to the IAPA expressly allows parties to challenge and empowers courts to review agency action that previously would have been upheld under the common law de facto officer doctrine. The majority notes that, historically, we have “applied the [de facto officer] doctrine to ... errors in election or appointment.” However, none of the cases cited by the majority address an improperly constituted decision-making body or member subject to disqualification after the 1998 amendments to the IAPA. Those cases cited by the majority predated the 1998 amendment and are no longer apposite. See, e.g., State v. Cent. States Elec. Co., 288 Iowa 801, 818, 28 N.W.2d 457, 466 (1947); Cowles v. Indep. Sch. Dist., 204 Iowa 689, 698-99, 216 N.W. 83, 87-88 (1927); Metro. Nat’l Bank v. Commercial State Bank, 104 Iowa 682, 687, 74 N.W. 26, 28 (1898). Similarly, because there is no analogous federal provision to Iowa Code *439 section 17A.19(10)(e) (2009), the federal caselaw discussed by the majority is inap-posite.
The majority’s interpretation renders part of section 17A.19(10)(e) without effect, contrary to our canons of construction. See Bearinger v. Iowa Dep’t of Transp., 844 N.W.2d 104, 110 (Iowa 2014) (“We are to interpret [legislation] in a manner to avoid ... rendering any part of the enactment superfluous.” (internal quotation marks omitted)); State v. Keutla, 798 N.W.2d 731, 734 (Iowa 2011) (‘We seek an interpretation that does not render portions of [a statute] redundant or irrelevant.”). By concluding the agency action must be upheld under the de facto officer doctrine, the majority effectively cuts off any opportunity to seek review under the “subject to disqualification” language of section 17A.19(10)(e) and leaves it meaningless. What does that term mean if it can be trumped by the de facto officer doctrine? The majority offers no answer.
Rather, the majority concludes the de facto officer doctrine survives the 1998 amendment because that term is not mentioned in section 17A.19(10)(e). Yet, as the majority acknowledges, we presume amendments to statutes alter the law. See Postell v. Am. Family Mut. Ins. Co., 823 N.W.2d 35, 49 (Iowa 2012) (“Finally, when the legislature amends a statute, it raises a presumption that the legislature intended a change in the law.”). And, as the majority further acknowledges, “[t]he common law may be repealed by implication in a statute that plainly expresses the legislature’s intent to do so.” Atwood v. Vilsack, 725 N.W.2d 641, 644^5 (Iowa 2006). That is what we have here. The majority’s interpretation is not supported by its reliance on the rule of construction that statutes are presumed not to repeal the common law. Our legislature has overruled that rule of construction:
The rule of the common law, that statutes in derogation thereof are to be strictly construed, has no application to this Code. Its provisions and all proceedings under it shall be liberally construed with a view to promote its objects and assist the parties in obtaining justice.
Iowa Code § 4.2.
Farm Bureau’s challenge is the exact situation contemplated by the statute. There is no question that La Seur, at the time of the action in question, was subject to disqualification under Iowa Code section 455A.6(1). The parties agree she was no longer an Iowa elector at the time of the vote in question. Therefore, I would conclude the decision-making body was improperly constituted with her voting participation. See Iowa Code § 455A.6(1) (requiring all Commission members to be electors of the State of Iowa).
Next, Farm Bureau has shown its “substantial rights” were prejudiced by La Seur’s act of voting while disqualified. See Iowa Code § 17A.19(10) (“The court shall reverse, modify, or grant other appropriate relief from agency action, equitable or legal and including declaratory relief, if it determines that substantial rights of the person seeking judicial relief have been prejudiced-”). We have described the “substantial rights” language as follows:
We have found this “substantial rights” language analogous to a harmless error rule. We recognize the commissioner’s action “should not be tampered with unless the complaining party has in fact been harmed.” This form of analysis is appropriate because it would be inefficient for us to provide relief from invalid agency action when the particular invalidity has not prejudiced the substantial rights of the petitioner. Therefore, [the complainant] bears the burden of dem *440 onstrating both the invalidity of the agency’s action and resulting prejudice.
Hill v. Fleetguard, Inc., 705 N.W.2d 665, 671 (Iowa 2005) (citations omitted).
Prejudice is easily established here. We have long held that a vote is invalid when one member of a voting body should have been disqualified from voting, even when the tainted member’s vote is not decisive. See, e.g., Wilson v. Iowa City, 165 N.W.2d 813, 819 (Iowa 1969). In Wilson, the five members of the city council of Iowa City voted on and adopted resolutions related to urban renewal. Id. at 816-17. However, at the time of the votes, at least one member of the council was prohibited by a statute from voting on issues related to urban renewal because of an existing conflict of interest. Id. at 817, 820-21. In determining whether the vote should be vacated, even when the vote of the disqualified member would not have changed the outcome, we held “the better rule holds a vote cast in violation of a conflict of interest statute, even if immaterial to the outcome, vitiates the proceeding.” Id. at 819. We noted two rationales supported such a rule: (1) “the participation of the disqualified member in the discussion may have influenced the opinion of the other members,” and (2) “such participation may cast suspicion on the impartiality of the decision.” Id. at 820 (internal quotation marks omitted). We stated, “It being impossible to determine whether the virus of self-interest affected the result, it must ... be assumed that it dominated the body’s deliberations, and that the judgment was its product.” Id. (internal quotation marks omitted). The same is true here.
La Seur’s participation while disqualified may have influenced the opinion of the other members, and in the very least, it casts suspicion on the decision. As in Wilson, it is impossible for us to know the exact impact of La Seur’s participation. The Iowa cases relied upon by the majority for the de facto officer doctrine predated both Wilson and the IAPA.
The majority, by denying Farm Bureau’s challenge raised on direct review, renders meaningless the requirement that Commissioners be Iowa residents. I would conclude La Seur’s failure to maintain her status as an Iowa elector enables the district court to review the agency’s action under Iowa Code section 17A.19(10)(e), and summary judgment was improperly granted to the EPC on the issue.
Even if this case was decided under our common law, I would find La Seur’s vote is not validated by the de facto officer doctrine. Because of the foregoing rationales for residency and elector requirements, I disagree with the majority’s contention that La Seur’s failure to maintain her status as an Iowa elector “is comparable to that of an elected official who fails to properly take the oath of office.” Taking the oath of office is a technical procedure to be performed before an otherwise qualified candidate takes office. By contrast, the requirement that each member of the commission be an elector of this state is a condition of holding office that is fundamental, not technical. This residency requirement cannot be remedied through a procedural step such as taking or retaking an oath.
La Seur’s failure to maintain her status as an Iowa elector is similar to the failure of the officer in State v. Palmer to take the required training course prior to administering a breath test. See 554 N.W.2d 859, 864-65 (Iowa 1996). In that case, we noted allowing an officer to be considered a de facto peace officer approved to administer the test without the proper training would “ignore the legislature’s decision to define ‘peace officer’ more narrowly for purposes of the implied consent law,” and *441 “would completely ignore [the statute]’s requirement of specialized OWI training.” Id. at 865. We further noted the absence of the training was more than a “technical infirmity” because the training provided safeguards to protect the citizens of Iowa from improperly administered tests with consequential criminal and administrative penalties including loss of driving privileges. See id. at 865-66. As the majority points out, “the de facto officer doctrine is not applied when the particular disqualification at issue undermines the integrity and confidence demanded in actions taken or decisions made by government.”
Here, allowing La Seur to vote on rules affecting the citizens of Iowa when she did not meet the basic qualification that she be an Iowa elector “ignore[s] the legislature’s decision” to require commissioners to be electors of the state. See id. at 865; cf. Sargent, 145 Iowa at 307, 124 N.W. at 343 (“The fixing of qualifications for office is a legislative and not a judicial function.”). Further, as noted above, the elector requirement protects Iowa’s citizens by ensuring that those individuals responsible for making rules that will affect the citizens of the state will be interested and invested in the outcome of the rulemaking procedures, as they themselves will live under the rules that are enacted. Therefore, the failure to maintain status as an elector of the state is more than a technical infirmity. As one of only two qualifications required of every commission member, it “goes to the heart” of the qualifications set forth under section 455A.6(1), and therefore, La Seur’s vote should not be rescued by the de facto officer doctrine. See Palmer, 554 N.W.2d at 865.
For these reasons, I conclude La Seur’s failure to maintain her status as an Iowa elector, as required by Iowa Code section 455A.6(1), left her subject to disqualification and rendered the Commission an improperly constituted decision-making body. See Iowa Code § 17A.19(10)(e). That statute trumps the de facto officer doctrine. But, even under the majority’s common law analysis, La Seur’s participation should not be excused by the de facto officer doctrine. Her participation in voting, therefore, invalidates the Commission’s antidegradation rules. See Wilson, 165 N.W.2d at 820. Accordingly, I would reverse the district court’s entry of summary judgment against Farm Bureau.
Mansfield and Zager, JJ., join this concurrence in part and dissent in part.

. Iowa Code section 455A.6 creates a nine-member commission and requires that three members shall be "actively engaged in livestock and grain farming,” one member shall be "actively engaged in the business of finance or commerce," and one member shall be "actively engaged in the management of a manufacturing company.” Iowa Code § 455A.6(l)(a)-(c).

. The record suggests that Commissioner Heathcote may have counseled her colleagues in the environmental organization at the Iowa Environmental Council on how to lobby for the antidegradation rules while the proposed rules were pending before the Commission. Farm Bureau, however, has not advanced this as a ground for disqualifying her, focusing instead on allegations of bias and conflict of interest. I agree with the majority that Commissioner Heathcote’s outside employment with Iowa Environmental Council and her policy positions do not disqualify her from voting on the antidegradation rules. I leave for another day whether a commissioner can vote on a rulemaking proceeding when the commissioner also was personally involved in outside lobbying on that same proceeding.

. See, e.g., Iowa Const, art. Ill, § 4 (stating a state representative "shall have been an inhabitant of this state one year next preceding his election, and at the time of his election shall have had an actual residence of sixty days in the county, or district he may have been chosen to represent”); id. art. Ill, § 5 (requiring state senators to satisfy the same residence requirement as state representatives); id. art. IV, § 6 (requiring the Governor and Lieutenant Governor to be Iowa residents); id. art. V, § 16 (requiring members of the judicial nominating commissions to be Iowa electors); Iowa Code § 217.2(l)(c) (2013) (requiring members of the Council on Human Services to be Iowa electors); id. § 330.20 (requiring members of local airport commission to be residents "of the city or county establishing the commission or a resident of a city or county in this state served by the airport”); id. § 347.9 (requiring trustees of a county public hospital to be residents of the county); id. § 368.14 ("A local representative [to the City Development Board] must be a registered voter of the territory or city which the representative represents ....”); id. § 400.17(3) ("[Civil service e]mployees shall not be required to be a resident of the city in which they are employed, but they shall become a resident of the state within two years of such appointment or the date employment begins and shall remain a resident of the state during the remainder of employment.”); id. § 421.1(1) ("The state board of tax review ... shall consist of three members who shall be registered voters of the state_").

. The purpose of the IAPA is, in part, "to simplify the process of judicial review of *438 agency action as well as increase its ease and availability.” Iowa Code § 17A. 1(3). The IAPA "is meant to apply to all rulemaking and contested case proceedings and all suits for the judicial review of agency action.” Id. § 17A.1(2); accord IES Utils., Inc. v. Iowa Dep't of Revenue & Fin., 545 N.W.2d 536, 539 (Iowa 1996) ("The [I] APA generally allows ... judicial review from an agency action to district court whether the action is rulemaking, a contested case, or 'other agency action.' ”).

. La Seur is a graduate of the Yale Law School and a licensed attorney. She should have known that' moving to Montana and registering to vote there would end her status as an Iowa elector and would disqualify her from continued service on the Commission.